UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **KEITH L. IVY, by and through next friend EVA D. IVY,** ) ) ) | |
| **Plaintiff,** ) ) | |
| vs. ) ) | Case No. 4:10-CV-02126-RWS-NAB |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security** ) ) ) ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael Astrue ("Defendant") denying the application for Child's Insurance Benefits - Survivor Claim - under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 435, filed by Keith Ivy ("Plaintiff").[1] Plaintiff filed a Brief in Support of the Complaint. [Doc. 14]. Defendant filed a Brief in Support of the Answer. [Doc.18]. Plaintiff did not file a Reply. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 15]. For the reasons set forth below, the undersigned recommends that the decision of the Commissioner of Social Security be affirmed.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for child's insurance benefits on November 5, 2008. His claim was denied at the initial determination level and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 4). The ALJ held a hearing and denied the claim in a written decision dated April 21, 2010. (Tr. 8-13). The Appeals Council

---

[1]The application for benefits and this appeal were filed on behalf of Plaintiff by his next friend, Eva Ivy.

denied Plaintiff's request for review. (Tr. 1-3). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## EVIDENCE BEFORE THE ALJ

**A. Testimony at the Hearing**

The ALJ held a hearing on November 4, 2009. (Tr. 31-56). Plaintiff appeared at the hearing with his mother, Eva Ivy, and his niece. Plaintiff was not represented by counsel and Plaintiff provided the only testimony at the hearing.

Plaintiff testified that he lives with his mother and niece. (Tr. 40). He completed about one and a half years of college. *Id*. While in high school, he did not take part in the school's special education program. (Tr. 41). The earliest that Plaintiff can remember his disability appearing was when he was five years old and saw an article that John Lennon died. (Tr. 41-42). Afterwards, Plaintiff started having serious nightmares and as he grew older the nightmares occurred nightly and they continue to happen. (Tr. 42). Plaintiff stated that his father died of lithium poisoning. (Tr. 42-43). His father was being treated with lithium for post-traumatic stress syndrome which he developed while serving in the Vietnam War. *Id*. Plaintiff testified that his father's death made his mother hesitant to take him to doctors and medicate him. (Tr. 43). Plaintiff believes that part of his illness is a result of his father's illness. (Tr. 42-44).

Plaintiff testified that he was hospitalized for a "couple of weeks" for psychiatric reasons because he jumped out of a moving vehicle, taking off his clothes, and running down the street. (Tr. 44-45). Plaintiff was over the age of twenty-two when this incident occurred. (Tr. 44). Plaintiff testified that he was currently receiving mental health treatment from Dr. Siddiqui, who prescribed trazodone. (Tr. 46)..

2

Plaintiff testified that he applied for SSI benefits in 2005 and again with regards to this matter in 2008 because he did not realize that his illness might be connected to his father. *Id*. After a conversation with his mother, Plaintiff called Social Security to inquire if he could receive more benefits. (Tr. 47-48). Plaintiff stated that in 1998, he made around $6,600 as a gutter installer and took the job because it would allow him to not be around people. (Tr. 48-49). He eventually stopped going to work because work "wore" on him and was hard on his mental condition. (Tr. 49). Plaintiff testified that on his way home from work he would see visions of cars chasing him and the grills of the cars looked like teeth. (Tr. 49). In addition, he stated that his employer thought that he was weird and seclusive. (Tr. 50).

**B. Medical Records**

On August 19, 1994, Plaintiff went to the St. Louis County Department of Health Pinelawn Center ("Pinelawn"). (Tr. 195). He reported that he was extremely depressed and claimed to not receive any enjoyment out of life. *Id*. Doctors noted that he looked depressed and Plaintiff was prescribed medication for severe depression. *Id*. On September 1, 1994, Plaintiff called Pinelawn from Atlanta saying that he had signs of an infection in his urinary tract. (Tr. 192). Plaintiff was advised to contact a urologist when he returned to town. *Id*. On September 8, 1996, Plaintiff was seen at Pinelawn, where it was noted that Plaintiff's mood was better and that he did not start the medication that had been prescribed for his depression. (Tr. 192). It was also noted that Plaintiff did not look depressed that day. *Id*. (Tr. 193). On September 20, 1994, the patient's mother called and stated that Plaintiff should need no further treatment at this time but would need a follow up appointment in November. *Id*. Plaintiff

received brief treatment at Pinelawn in November and December of 1994 for a sexually transmitted disease. (Tr. 194).[2]

### III.
### ALJ DECISION

The ALJ determined that Plaintiff was born on July 23, 1974 and had not attained age twenty-two as of his alleged onset date, January 1, 1985. (Tr. 10). Plaintiff engaged in substantial gainful activity in 1998, but there has been a continuous twelve month period during which Plaintiff did not engage in substantial gainful activity. *Id*. The ALJ found that, before attaining the age of twenty-two, Plaintiff had the medically determinable impairment of bipolar disorder, but Plaintiff's impairment did not significantly limit (or was not expected to significantly limit) his ability to perform basic work-related activities for twelve consecutive months. *Id*. The ALJ therefore concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, at any time before July 22, 1996, the date Plaintiff attained the age of twenty-two. *Id*.

### IV.
### LEGAL STANDARDS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, the Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails

---

[2] The record contains medical evidence from 2002 to 2009, however, as discussed in more detail below, the undersigned finds this evidence to be irrelevant because it does not relate to Plaintiff's condition on or before July 23, 1996, which is the date by which Plaintiff's alleged disability must have been attained.

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). The burden of persuasion to prove disability remains with the claimant throughout the evaluation process. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citation omitted); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

In this sequential analysis, first, the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id*. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.[3] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 736,737 (8th Cir. 2004) 737. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. §§ 404.1520(f), 416.920(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

---

[3] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled.

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*,

363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).

The factual findings of the ALJ are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

## V.
## DISCUSSION

Plaintiff disagrees with the ALJ's finding that he has not been under a disability, as defined by the Act, at any time before Plaintiff attained the age of twenty-two.

To be entitled to child's insurance benefits on the earnings record of his mother or father, a claimant over the age of eighteen must have a disability that began before he attained twenty-two years of age. *See* 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5); *see also Richards v. Chater*, 964 F.Supp 1337, 1349 (E.D. Mo. 1997). Here, the ALJ determined that Plaintiff did not have a severe impairment before he reached the age of twenty-two. The undersigned finds substantial evidence to support this decision.

Plaintiff was born on July 23, 1974. Therefore, in order to be entitled to child's insurance benefits, Plaintiff must prove that he was disabled before his twenty-second birthday, which was July 23, 1996. *See* 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5). The are few medical records predating July 23, 1996. Treatment notes from Pinelawn between August of 1994 and March of 1995 are the only medical records presented that reference Plaintiff's condition before July 23, 1996. Those records indicate only that Plaintiff complained once of extreme depression on August 19, 1994. He also reported that he did not get any enjoyment out of life. The records do not suggest that the depression caused Plaintiff any significant limitations or that it affected him for any substantial length of time. In fact, on September 8, 1994, it was noted that Plaintiff's mood was better and he did not look depressed. The records do not indicate that Plaintiff was treated for depression or any other psychological issue and there is no further mention in the records from Pinelawn of any psychological issues. Furthermore, there are no records from any other source that indicate that Plaintiff sought any treatment for psychological issues before July 23, 1996. *See Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem'"). With the exception of the medical records from Pinelawn, all of the medical evidence in the record relates to Plaintiff's

9

condition well after July 23, 1996. The record contains no medical evidence between March of 1995 and February of 2002 and although there are many records between February of 2002 and October of 2009, none of those records provide any insight as to Plaintiff's condition as it existed on or before July 23, 1996. Therefore, those records are not relevant to this decision. *See Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) (Past medical evidence is relevant to the extent it reflects upon the claimant's condition as of the date relevant to the disability determination). Therefore, the undersigned finds no objective medical evidence that establishes that Plaintiff's impairment was severe before July 23, 1996.

Plaintiff testified that he has suffered psychological problems since he was a child, but the ALJ discredited this testimony. The undersigned finds no error in this decision. An ALJ is not entitled to disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *O'Leary v. Schweiker*, 710 F.2d 1334, 1342 (8th Cir. 1983) (citations omitted). However, the ALJ may discount subjective complaints if there are inconsistencies in the evidence as a whole. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). There are a number of inconsistencies in the present case that undermine Plaintiff's credibility and justify the ALJ's decision to discredit the testimony. First, the undersigned reiterates the fact that no objective medical evidence supports Plaintiff's contention. *See Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) ("The lack of supporting objective medical evidence may be used as 'one factor to be considered in evaluating the credibility of the testimony and complaints.'") (quoting *Polaski*, 739 F.2d at 1322)). Second, Plaintiff testified at the hearing that he has suffered psychological problems such as hearing voices since he was a child. However, as the ALJ noted, Plaintiff specifically denied to doctors at Christian Hospital in February of 2002 that

he had any history of auditory hallucinations or any history of psychotic symptoms. *See Gray v. Apfel*, 192 F.3d 799, 803 (8th Cir. 1999) (Court upheld ALJ's decision that the claimant's inconsistent statements regarding symptoms "cast doubt upon his credibility."). Finally, Plaintiff was able to work for many years despite his impairment. The record reveals that Plaintiff held various jobs between 1989 and 1991, in 1994, and between 1998 and 2001. As noted by the ALJ, Plaintiff's work in 1998 constituted substantial gainful activity. The fact that Plaintiff was able to work and even perform substantial gainful activity in the years after he turned twenty-two is inconsistent with his claim that he has been under a disability since January 1, 1985. *See Goff*, 421 F.3d at 792 ("Working generally demonstrates an ability to perform substantial gainful activity."). For these reasons, the undersigned finds that substantial evidence supports that ALJ's decision to discredit Plaintiff's testimony.

The undersigned is aware that the Commissioner, in a different proceeding, determined that Plaintiff has been disabled since April 27, 2005. However, that decision has no bearing on the present case. The focus of inquiry here is whether Plaintiff is under a disability, as defined by the Social Security Act, that began before July 23, 1996. *See* 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5). The ALJ found that Plaintiff's impairment was not severe before the relevant date and for the reasons discussed above, the undersigned finds substantial evidence to support that decision. Therefore, the undersigned recommends that the ALJ's decision be upheld.

## VI.
## CONCLUSION

For the reasons set forth above, the undersigned finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not entitled to Child's Insurance Benefits and recommends that the Commissioner's decision be upheld.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **DENIED** and that judgment be entered in favor of Defendant. [Doc. 1]; [Doc. 14].

The parties are advised that pursuant to 28 U.S.C. § 636(b)(1) they have fourteen (14) days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained, and that a failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990).

Dated this 22nd day of November, 2011.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE